Filed 12/18/20  P. v. Antuna CA6
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH ANTUNA,<br><br>　　　Defendant and Appellant. | H042678<br>(Santa Clara County<br>Super. Ct. No. C1084548) |

Pursuant to a plea agreement, defendant Joseph Antuna pleaded guilty to murder (count 1) (Pen. Code, §§ 187, 189)[1] and two counts of attempted murder (counts 2 & 3) (§§ 187, 664, subd. (a)); he admitted allegations that those attempted murders were willful, deliberate, and premeditated; he admitted gang and firearm allegations; and he waived his appellate rights.  In exchange, defendant received a total term of 50 years to life for the murder and the associated firearm enhancement (§ 12022.53, subd. (d)) and concurrent sentences on the remaining two counts. Defendant was 21 years old when he committed those offenses.

The passage of Senate Bill No. 620 (20l7-2018) (Senate Bill 620) amended section 12022.53, subdivision (h) (12022.53(h)), effective January 1, 2018.  (Stats. 2017, ch. 682, § 2; Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)  Prior to this amendment, section 12022.53(h) and the predecessor statute mandated imposition of

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

the section's firearm enhancements.[2]  This was the law when defendant committed his crimes and when he was sentenced.  Since its amendment in 2017, section 12022.53(h) has provided:  "The court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

On appeal defendant asserts that the judgment should be reversed to permit the trial court to retroactively exercise its discretion to strike the firearm enhancements as now permitted by section 12022.53(h).  Defendant maintains that this issue is not barred by his general waiver of his right to appeal or by the lack of a certificate of probable cause.[3]  Defendant further asserts that since the youth offender parole hearing statutes now apply to him, the case should be remanded for a "*Franklin* hearing" (see *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*)) to preserve mitigating evidence tied to his youth.  He contends that failure to order such a remand would result in a violation of his rights to due process and equal protection under the law.

After we filed our original opinion, the California Supreme Court granted review and later issued an order transferring the matter to this court with directions (S257744).  We vacated the original opinion pursuant to the transfer order.  We now reconsider the cause in light of *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), as directed.

We again find that neither defendant's general waiver of his right to appeal nor the lack of a certificate of probable cause bars this court from proceeding with this appeal

---

[2] Until the 2017 amendment took effect, section 12022.53(h) provided: "Notwithstanding [s]ection 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."  (Stats. 2010, ch. 711, § 5; see Stats. 2006, ch. 901, § 11.1 [former § 12022.53(h)].)

[3] Defendant's motion for relief from default and for leave to file an amended notice of appeal that includes a statement of reasonable grounds and a request for a certificate of probable cause is denied.  (See Cal. Rules of Court, rules 8.60(d), 8.304(b), 8.308(a); *People v. Mendez* (1999) 19 Cal.4th 1084, 1098-1099.)

and reaching the issues that he now raises. We again determine that defendant's assertion that section 12022.53(h), as amended, applies retroactively to him does not attack the validity of his guilty plea. Our determination is consistent with the reasoning of *Stamps* because defendant does not seek to set aside or withdraw his plea or challenge it as defective or invalid when entered. (See *Stamps*, *supra*, 9 Cal.5th at pp. 696, 698.) We conclude, as we did before, that amended section 12022.53(h) applies retroactively under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). We also again determine that defendant should have the opportunity for a *Franklin* hearing upon remand.

In *Stamps*, however, the Supreme Court clarified the remedy that is available to a defendant who agreed to a specific term of imprisonment pursuant to a plea agreement but later claims on appeal that he is entitled to the retroactive benefit of an ameliorative change in the applicable sentencing law. Under the reasoning of *Stamps*, such a defendant must establish both that the amended law applies retroactively under *Estrada* (*Stamps*, *supra*, 9 Cal.5th at p. 701) *and* that in enacting the law, the Legislature intended the law to retroactively apply to modify a negotiated sentence, despite the usual legal constraints on altering agreed-upon terms. (*Id.* at pp. 701, 704; see § 1192.5.) The court outlined the potential consequences to a plea agreement if no such legislative intent is established. (*Stamps*, *supra*, at pp. 707-708.)

Section 1192.5 states in part: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, . . . the court may not proceed as to the plea other than as specified in the plea." In this case, defendant has not shown that the legislative intent in enacting Senate Bill 620 was to modify the mandate of section 1192.5. (See *Stamps*, *supra*, 9 Cal.5th at p. 704.) With a full understanding of the potential consequences to his plea agreement, as fleshed out in *Stamps*, defendant should now "be allowed to make an informed decision whether to seek relief on remand" (*id.* at p. 708).

3

We will reverse the judgment and remand the matter to allow defendant the opportunity to request relief under section 12022.53(h) and to have a *Franklin* hearing.

I

*Procedural History*

Defendant's motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) was granted on June 20, 2012.

A first amended information (hereafter information) charged defendant with three counts[4] committed on or about June 25, 2010: murder of C.L. with malice aforethought (§ 187) (count 1) and the attempted murders of I.C. and C.C. (§§ 187, 664, subd. (a)) (counts 2 & 3). The information alleged that the attempted murders charged in counts 2 and 3 were committed willfully, deliberately, and with premeditation. It alleged that all of the charged offenses were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C) (10-year enhancement) and that the attempted murders charged in counts 2 and 3 were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(5) (15-year minimum parole eligibility term). As to counts 1 and 3, the information alleged that defendant personally and intentionally discharged a firearm and proximately caused great bodily injury or death within the meaning of 12022.53, subdivision (d) (consecutive 25-years-to-life enhancement). As to count 2, the information alleged that defendant was a principal and a principal had intentionally and personally discharged a firearm and proximately caused great bodily injury within the meaning of section 12022.53, subdivisions (d) and (e)(1) (consecutive 25-years-to-life enhancement).

At a change-of-plea hearing on May 6, 2015, the prosecutor announced that defendant would be pleading guilty to all charges against him in the information and admitting all associated allegations as part of a plea agreement. The prosecutor informed the court that the parties had agreed that the total sentence on count 1 would be 50 years

---

[4] A codefendant was charged with six counts.

4

to life, which included a 25-years-to-life term for first degree murder and a 25-years-to-life term for the firearm enhancement, and that the sentences on counts 2 and 3 would run concurrently.

Defendant pleaded guilty to murder (count 1).[5]  As to this crime, he also admitted the criminal street gang enhancement allegation (§ 186.22, subd. (b)(1)(C) [10-year enhancement]) and the firearm enhancement allegation pursuant to section 12022.53, subdivision (d).  He also pleaded guilty to two counts of attempted murder (counts 2, 3) (§§ 187, 664, subd. (a)), and as to those counts, he admitted that the offenses were willful, deliberate, and premeditated (see §§ 189, 664, subd. (a)) and admitted the criminal street gang allegations pursuant to section 186.22, subdivision (b)(5)[6] and the firearm enhancement allegations.

At the time of sentencing on June 5, 2015, the trial court imposed a total sentence of 50 years to life.  The total term on count 1 included a term of 25 years to life for murder[7] (§ 190, subd. (a)) plus a consecutive 25-years-to-life firearm enhancement (§ 12022.53, subd. (d)).  On both counts 2 and 3, the court imposed concurrent terms of

---

[5] The trial court asked defendant, "Then what is your plea to count one, that on or about June 25th of 2010 in the County of Santa Clara, State of California, you violated Penal Code Section 187, murder, in that you did unlawfully and with malice aforethought kill [C.L.], a human being?  Defendant answered, "Guilty."

[6] Subdivision (b)(5) of section 186.22 "serves as an alternate penalty provision" (*People v. Fuentes* (2016) 1 Cal.5th 218, 224), "imposes a minimum prison confinement of 15 years before a defendant is eligible for parole, [and] applies when the underlying felony by its own terms provides for a life sentence."  (*Ibid.*)

[7] At the sentencing hearing, defendant protested that the count 1 offense was not first degree murder.  The trial court indicated that proceedings were beyond that point.  On appeal, defendant does not argue that the abstract of judgment incorrectly reflects the count 1 crime to which he pleaded.  We note that in *People v. Hester* (2000) 22 Cal.4th 290, the Supreme Court stated:  "Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction.  The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process.  [Citations.]"  (*Id.* at p. 295.)

40 years to life, which each included a 15-years-to-life term for attempted murder (see *ante*, fn. 6) plus a consecutive 25-years-to-life firearm enhancement. The court said that as to each of the three counts, it was striking the 10-year enhancement (§ 186.22, subd. (b)(1)(C)) pursuant to section 186.22, subdivision (g).[8]

Defendant filed a notice of appeal and requested a certificate of probable cause. The request merely stated: "For reasons that were stated in court, defendant's plea was involuntary and he received ineffective assistance of counsel."[9] The request was denied.

II

*Discussion*

A. *Stamps*

The defendant in *Stamps* had entered into a plea agreement providing for a specified term that included a prior serious felony enhancement (§ 667, subd. (a)). (*Stamps*, *supra*, 9 Cal.5th at p. 692.) On appeal, he claimed that a change in the law that permitted a trial court to strike such an enhancement in furtherance of justice (§ 1385, subd. (a)) applied retroactively to him. (*Stamps*, *supra*, at p. 692.) He asserted that in light of the passage of Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393), which amended sections 667 and 1385 (Stats. 2018, ch. 1013, §§ 1, 2), "his case should be remanded to the trial court to exercise its discretion whether to strike the serious felony enhancement." (*Stamps*, *supra*, at p. 693.)

The California Supreme Court held in *Stamps* that the "defendant was not required to obtain a certificate of probable cause (Pen. Code, § 1237.5) to claim on appeal that the new law applied to him retroactively . . . ." (*Stamps*, *supra*, 9 Cal.5th at p. 692.) The court first recognized the basic principle that a defendant's "claim that seeks to avoid a

---

[8] Defendant admitted a gang enhancement within the meaning of section 186.22, subdivision (b)(1)(C), as to only count 1.

[9] "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " (*Faretta*, *supra*, 422 U.S. at p. 834, fn. 46; see *People v. Espinoza* (2016) 1 Cal.5th 61, 75.)

6

term of [a plea] agreement, as made, is an attack on the plea itself." (*Id*. at p. 695.) However, the court observed that defendant Stamps was relying on the separate "principle that 'the general rule in California is that plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.' (*Doe v*. *Harris* (2013) 57 Cal.4th 64, 71 [(*Doe*)].)" (*Ibid*.) It quoted from the *Doe* decision: " 'That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them' ([*Doe*,] at p. 66), and '[i]t follows . . . that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement' (*id*. at p. 73). (See *Harris v*. *Superior Court* (2016) 1 Cal.5th 984, 990-991 . . . .)" (*Id*. at pp. 695-696.)

The Supreme Court determined in *Stamps* that no certificate was required because the defendant in that case was "seeking retroactive application of a subsequently enacted ameliorative provision, which he contend[ed] ha[d] been incorporated into his plea agreement." (*Stamps*, *supra*, 9 Cal.5th at p. 696.) Thus, the defendant was "seek[ing] relief because the law subsequently changed to his potential benefit." (*Id*. at p. 698.) He was not "seek[ing] to put aside or withdraw his plea" (*ibid*.) and he was not challenging his plea as defective or invalid when made. (*Id*. at pp. 696, 698.)

The Supreme Court then concluded in *Stamps* that under *Estrada*'s general presumption that ameliorative criminal laws apply retroactively, the change made by Senate Bill 1393 applied retroactively to the defendant. (*Stamps*, *supra*, 9 Cal.5th at pp. 698-699.) The court recited the *Estrada* rule: "[I]f no contrary indication exists, '[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it

7

constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.' [Citation.]" (*Stamps*, *supra*, 9 Cal.5th at p. 699.) The court further stated: " 'The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, "a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." ' [Citation.]" (*Ibid*.)

The Supreme Court concluded in *Stamps* that Senate Bill 1393 applied retroactively to the defendant because (1) the bill "constitute[d] an ameliorative change within the meaning of *Estrada*" (*Stamps*, *supra*, 9 Cal.5th at p. 699); (2) there was no indication of a contrary legislative intent to make the bill apply only prospectively (*ibid*.); and (3) the defendant's "judgment [was] not yet final." (*Ibid*.) However, the court stated that it was "not enough for [the] defendant to establish that the amended section 1385 applie[d] to him retroactively under *Estrada* in order to receive the remedy he seeks." (*Id*. at p. 701.)

The Supreme Court explained: "Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term. Section 1192.5 allows a plea to 'specify the punishment' and 'the exercise by the court thereafter of other powers legally available to it,' and '[w]here the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and *the court may not proceed as to the plea other than as specified in the plea*.' (Italics added.)" (*Stamps*, *supra*, 9 Cal.5th at p. 700.) Accordingly, "[i]n order to justify a remand for the court to consider striking his serious felony enhancement while

maintaining the remainder of his bargain, defendant [Stamps] [had to] establish not only that Senate Bill 1393 applie[d] retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id*. at p. 701.)

The Supreme Court found that "[n]othing in the language and legislative history of Senate Bill 1393 suggest[ed] an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties." (*Stamps*, *supra*, 9 Cal.5th at p. 704.) It found that "Senate Bill 1393 [was] silent regarding pleas and provide[d] no express mechanism for relief" (*ibid*.), which "undercut[] any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Ibid*.) The court rejected defendant Stamps's contention that "the [trial] court on remand should be allowed to exercise its discretion to reduce his prison term by five years but otherwise maintain the plea bargain." (*Id*. at p. 705.)

The Supreme Court made clear in *Stamps* that the proper remedy was not as the defendant had argued "to simply allow the trial court to reduce his sentence by five years while otherwise maintaining the remainder of the plea agreement." (*Stamps*, *supra*, 9 Cal.5th at p. 708.) The court distinguished the circumstances in *Harris v. Superior Court*, *supra*, 1 Cal.5th 984 (*Harris*), which involved Proposition 47's postjudgment procedure that allowed certain eligible defendants to petition for a recall of sentence in order to have specified convictions resentenced as misdemeanors (see § 1170.18, subds. (a), (b)),[10] from the situation in *Stamps*. (*Stamps*, *supra*, at p. 704.) The court explained: "[In *Harris*,] [t]he electorate [had] evinced an intent that these offenses be treated as

_____

[10] "In November 2014, the voters passed Proposition 47, The Safe Neighborhoods and Schools Act, which reduced certain drug- and theft-related offenses from felonies or 'wobblers' to misdemeanors." (*People v. Martinez* (2018) 4 Cal.5th 647, 651.) The proposition also added section 1170.18. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 14, pp. 73-74.)

9

misdemeanors no matter how or when a defendant suffered the conviction. As *Harris* reasoned, to allow the prosecution, in response to a successful resentencing petition, to withdraw from a plea agreement and reinstate dismissed charges would frustrate electoral intent to treat these offenses uniformly as misdemeanors, essentially denying meaningful relief to those convicted through plea bargains. (See *Harris*, *supra*, 1 Cal.5th at p. 992.)" (*Ibid*.)

After agreeing that the passage of Senate Bill 1393 resulted in an ameliorative change in the law that applied retroactively to permit a trial court to strike a serious felony enhancement in furtherance of justice (§ 1385, subd. (a)), the Supreme Court set forth the appropriate remedy for defendant Stamps. The court stated: "If he desires, [the] defendant should be given the opportunity to seek the court's exercise of its section 1385 discretion. If the court on remand declines to exercise its discretion under section 1385, that ends the matter and [the] defendant's sentence stands." (*Stamps*, *supra*, 9 Cal.5th at p. 707.) The court further explained: "If the court indicates an inclination to exercise its discretion under section 1385, the prosecution may, of course, agree to modify the bargain to reflect the downward departure in the sentence such exercise would entail. Barring such a modification agreement, 'the prosecutor is entitled to the same remedy as the defendant—withdrawal of assent to the plea agreement . . . .' [Citation.]" (*Ibid*.) The court stressed that in any case, the trial court has the power to "withdraw its prior approval of the plea agreement." (*Id*. at p. 708.)

The Supreme Court concluded that the defendant "should be allowed to make an informed decision whether to seek relief on remand" based on a full understanding of the possible ramifications of any request to have the trial court exercise its discretion to strike a prior serious felony enhancement pursuant to section 1385. (*Stamps*, *supra*, 9 Cal.5th at p. 708.) In its disposition, the Supreme Court reversed the appellate court judgment "with directions to remand the matter to the superior court to allow defendant an opportunity to seek relief under Senate Bill 1393." (*Id*. at p. 709.)

B. *Firearm Enhancements Imposed under Section 12022.53*

In this case, defendant argues that even though he agreed to a specific term of imprisonment pursuant to a plea bargain, the case should be remanded to permit the trial court to exercise its discretion under section 12022.53(h), as amended by Senate Bill 620. Defendant maintains that he may raise this issue, even though he orally waived his right to appeal when he entered his pleas and admissions and did not obtain a certificate of probable cause.

1. *Waiver of Right to Appeal*

Defendant argues that the scope of his general waiver of his right to appeal did not extend to "prospective sentencing errors" and that therefore we may reach the merits of his contention that amended section 12022.53 retroactively applies to him. Defendant insists that his appellate waiver did not encompass such errors because "the trial court did not sufficiently advise [him] of his right to appeal," he did not specifically waive future sentencing errors, and he "did not knowingly and intelligently waive [his] appellate rights with respect to prospective sentencing errors." He also asserts that "[b]ecause [he] did not knowingly and intelligently [waive] the right to appeal future sentencing errors, the appeal cannot in any sense be construed as an attack on the validity of the plea."

a. *Background*

In a letter to the Deputy District Attorney Miguel Valdovinos, dated April 27, 2015, defendant, who was representing himself, stated that he was contacting Valdovinos to settle the case. In the letter, defendant stated in part, "I want to get this case over with. If this requires my pleading guilty and waiving my right to appeal, then I will accept that along with whatever amount of time you feel is reasonable."

At the change of plea hearing on May 6, 2015, the prosecutor told the court that the terms of the parties' plea agreement included a waiver of appellate rights. Before accepting defendant's pleas and admissions, the court advised defendant of the constitutional rights that he would give up by pleading guilty, elicited defendant's waiver

of those rights, and informed defendant of the consequences of such pleas and admissions.  Specifically, as to the right to appeal, the trial court told defendant, "And you're also, by this plea, waiving any right to appeal.  Do you understand that?"  Defendant replied, "Yeah."

b.  *Law Governing Waiver of Right to Appeal*

"Just as a defendant may affirmatively waive constitutional rights to a jury trial, to confront and cross-examine witnesses, to the privilege against self-incrimination, and to counsel as a consequence of a negotiated plea agreement, so also may a defendant waive the right to appeal as part of the agreement.  [Citations.]"  (*People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*).)  "To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary.  [Citations.]  Waivers may be manifested either orally or in writing.  [Citation.]"  (*Ibid.*)

The Supreme Court in *Panizzon* agreed that *People v. Sherrick* (1993) 19 Cal.App.4th 657 and *People v. Vargas* (1993) 13 Cal.App.4th 1653 (*Vargas*) "generally support[ed] the proposition that a defendant's general waiver of the right to appeal, given as part of a negotiated plea agreement, will not be construed to bar the appeal of sentencing errors occurring subsequent to the plea."  (*Panizzon*, *supra*, 13 Cal.4th at p. 85, fn. omitted.)  The Supreme Court pointed out, however, that "the defendants in those decisions were attempting to appeal sentencing issues that were left *unresolved* by the particular plea agreements involved."  (*Ibid.*)  The court explained that "[i]n each of those decisions, the appellate court viewed the sentencing issue as not being within the contemplation and knowledge of the defendant at the time the waiver was made and so refused to extend thereto a general waiver of the right to appeal."  (*Ibid.*)

In *Panizzon*, the Supreme Court observed that "the sentence imposed by the court was neither unforeseen nor unknown at the time defendant executed the Waiver and Plea agreement" (*Panizzon*, *supra*, 13 Cal.4th at p. 86) and that "the essence of [the] defendant's claim [was] that his sentence [was] disproportionate to his level of culpability

12

[citation], a factor that . . . was known at the time of the plea and waiver." (*Ibid*.) In addition, the express terms of defendant Panizzon's waiver "specifically extended to any right to appeal [the specified] sentence." (*Ibid*.) The Supreme Court concluded that the defendant was seeking "appellate review of an integral element of the negotiated plea agreement, as opposed to a matter left open or unaddressed by the deal." (*Ibid*.)

It is generally understood that a defendant's "general waiver of appeal rights ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error. (*In re Uriah R*. (1999) 70 Cal.App.4th 1152, 1157.) Thus, a waiver of appeal rights does not apply to ' "possible future error" [that] is outside the defendant's contemplation and knowledge at the time the waiver is made.' [Citations.]" (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815.)

c. *The Validity of Defendant's General Waiver of His Right to Appeal*

To the extent defendant is asserting that his waiver of the right to appeal was unenforceable because it was not knowing and intelligent, defendant is in effect challenging the validity of his plea. We cannot reach this assertion in the absence of a certificate of probable cause.

"[I]ssues going to the validity of a plea require compliance with section 1237.5. [Citation.] . . . [A] certificate is required when a defendant claims that warnings regarding the effect of a guilty plea on the right to appeal were inadequate. [Citation.]" (*Panizzon*, *supra*, 13 Cal.4th at p. 76.) "[A] defendant who waives the right to appeal as part of a plea agreement must obtain a certificate of probable cause to appeal on any ground covered by the waiver, regardless of whether the claim arose before or after the entry of the plea. Absent such a certificate, the appellate court lacks authority under California Rules of Court, rule 8.304(b) to consider the claim because it is in substance a challenge to the validity of the appellate waiver, and therefore to the validity of the plea." (*People v. Espinoza* (2018) 22 Cal.App.5th 794, 797.)

13

As Justice Baxter explained in his concurring opinion in *People v. Buttram* (2003) 30 Cal.4th 773, "[a]n attempt to appeal the *enforceability* of the *appellate waiver itself* (for example, on grounds that it was not knowing, voluntary, and intelligent, or had been induced by counsel's ineffective assistance) would not succeed in circumventing the *certificate* requirement. This is because, however important and meritorious such a challenge might be, it too would manifestly constitute an *attack on the plea's validity*, thus requiring a certificate in any event." (*Id*. at p. 793, conc. opn. of Baxter, J.).)

d. *The Scope of Defendant's General Waiver of His Right to Appeal*

Defendant also contends that "the scope of [his] appellate waiver did not extend to sentencing issues that arose after the plea" and that consequently the waiver does not bar him from asking this court to remand the case to permit the trial court to exercise its discretion under section 12022.53(h), as amended. This court has concluded "[b]ased on our review of the relevant authorities, [that] a certificate of probable cause is *not* required [to resolve] the issue of *whether* the defendant's appellate claim falls within the scope of an appellate waiver." (*People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*), review den. May 22, 2019, S254821.)

" 'A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.]' (*People v. Shelton* (2006) 37 Cal.4th 759, 767 (*Shelton*).) Likewise, '[b]ecause waivers of appellate rights are ordinarily found in the context of a plea bargain, the scope of the waiver is approached like a question of contract interpretation—to what did the parties expressly or by reasonable implication agree? [Citations.]' (*In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1157.)" (*Becerra*, *supra*, 32 Cal.App.5th at pp. 188-189.) The fundamental goal in interpreting a plea agreement is to effectuate " 'the mutual intention of the parties' [Citation.]" (*Shelton*, *supra*, at p. 767.)

Ordinarily, a general waiver of the right to appeal does not encompass sentencing errors outside of the defendant's contemplation and knowledge at the time of the

14

negotiated plea and waiver. (See *Vargas*, *supra*, 13 Cal.App.4th at pp. 1661-1662 [alleged error in calculating conduct credits]; cf. *Panizzon*, *supra*, 13 Cal.4th at pp. 85-86.) We conclude that defendant's claims on appeal are outside the scope of his waiver of his right to appeal for the following reasons. First, a future change in sentencing law may be deemed incorporated into a plea agreement if the Legislature or the electorate so intends. (See *Doe*, *supra*, 57 Cal.4th at pp. 66, 71, 73-74; *Harris*, *supra*, 1 Cal.5th at pp. 990-992; see also *Stamps*, *supra*, 9 Cal.5th at pp. 695-696; *People v. Baldivia* (2018) 28 Cal.App.5th 1071, 1078 (*Baldivia*).) Second, defendant's waiver of his appellate rights was a general waiver that did not mention sentencing at all.[11] Third, the 2017 amendment of section 12022.53(h) was outside of defendant's contemplation and knowledge at the time of his negotiated plea and waiver in 2015. Similarly, at the time of defendant's plea and waiver, the possibility of a *Franklin* hearing pursuant to *Franklin*, *supra*, 63 Cal.4th 261 was also outside of defendant's contemplation and knowledge since that case had not yet been decided and under then existing law, he would not be entitled to a youth offender parole hearing. (See Stats. 2013, ch. 312, §§ 3, 4, 5.)

Significantly, in 2019, the Legislature enacted section 1016.8 (Stats. 2019, ch. 586, § 1), which went into effect on January 1, 2020 (see Cal. Const., art. IV, § 8, subd. (c); see also Gov. Code § 9600, subd. (a)). Section 1016.8 "codified [the Supreme Court's] decision in *Doe* that the circumstance 'the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them' (§ 1016.8, subd. (a)(1))." (*Stamps*, *supra*, 9 Cal.5th at p. 705.) Section 1016.8 also provides in part: "A provision of a plea bargain that

---

[11] The Supreme Court has indicated that a "general waiver" means "a waiver that is nonspecific, e.g., 'I waive my appeal rights' or 'I waive my right to appeal any ruling in this case.' " (*Panizzon*, *supra*, 13 Cal.4th at p. 85, fn. 11.) In *Panizzon*, the waiver was not a general waiver in that the written waiver and plea form initialed and signed by the defendant stated, "I hereby waive and give up my right to appeal from the sentence I will receive in this case." (*Id*. at p. 82.)

requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is *void as against public policy*."[12]  (§ 1016.8, subd. (b), italics added.)

*People v. Barton* (2020) 52 Cal.App.5th 1145 (*Barton*), review denied October 21, 2020, S264285, recently considered section 1016.8.  In that case, a defendant, who had waived her right to appeal pursuant to a plea agreement, contended on appeal that an ameliorative change to an enhancement statute applied retroactively to invalidate a pair of consecutive three-year enhancements (Health & Saf. Code, former § 11370.2, subd. (c)).  (See *Barton*, *supra*, at pp. 1149, 1151.)  The appellate court concluded that section 1016.8 retroactively applies to all cases not yet final on appeal because nothing in statutory text or legislative history of Assembly Bill No. 1618 (2019-2020 Reg. Sess.), which added section 1016.8, clearly signals that the Legislature intended the new section to apply only prospectively.  (*Barton*, *supra*, at p. 1153.)  The court further concluded that consequently, the "defendant's blanket waiver of the right 'to appeal from [the trial court's] sentence' [did] not preclude her from seeking retroactive application of [the senate bill amending Health and Safety Code section 11370.2]."  (*Id*. at p. 1154, fn. omitted.)  Reasoning analogous to *Barton*'s applies here.

For all the foregoing reasons, defendant's present contentions—that he is entitled to retroactive application of amended section 12022.53(h) and the *Franklin* decision— were not rendered noncognizable on appeal by his general waiver of the right to appeal.

2. *Certificate of Probable Cause Requirement*

Defendant acknowledges that "the plea agreement included an agreed-upon sentence of 50 years to life."  However, he asserts that there was no need for him to obtain a certificate of probable cause.  Citing *Doe*, *supra*, 57 Cal.4th at pp. 70-71, 73-74,

---

**12** For purposes of section 1016.8, " 'plea bargain' has the same meaning as defined in subdivision (b) of [s]ection 1192.7.' "  (§ 1016.8, subd. (c).)

he contends that his claim under section 12022.53(h), as amended after his negotiated plea, does not "call into question" the validity of his negotiated plea because "the plea agreement itself incorporated the newly-enacted [*sic*] law" (italics omitted). He maintains that the parties' plea agreement should be interpreted to include the trial court's recently acquired discretion to strike the firearm enhancements under section 12022.53(h). Defendant cites *People v. Hurlic* (2018) 25 Cal.App.5th 50, *Baldivia*, *supra*, 28 Cal.App.5th 1071, and now *Stamps* in support of his position.

In *Stamps*, the Supreme Court resolved the question whether a certificate of probable cause is necessary for a defendant to argue on appeal that a newly enacted ameliorative law applies retroactively to potentially reduce an agreed-upon sentence. As did the defendant in *Stamps*, defendant is arguing that an ameliorative change to an enhancement provision, which went into effect while his appeal was pending, applies to him. (*Stamps*, *supra*, 9 Cal.5th at pp. 695-696.) Defendant is not "seek[ing] to put aside or withdraw his plea" (*id*. at p. 698) and he is not challenging his plea as defective or invalid when made. (*Id*. at pp. 696, 698.) Accordingly, a certificate of probable cause is not required to assert his retroactivity claim. (See *id*. at pp. 692, 696-698.)

3. *Retroactive Application of Amended Section 12022.53*

Defendant asserts that amended section 12022.53(h) retroactively applies to his convictions based on (1) its statutory language that makes it applicable at any "resentencing" proceeding and (2) *Estrada*'s presumptive inference of retroactivity, which he maintains applies since the People have not rebutted it. (See *Estrada*, *supra*, 63 Cal.2d 740.) We agree that the amendment of section 12022.53(h), which eliminates the prior restriction on the trial court's ability to strike a firearm enhancement imposed under section 12022.53, constitutes an ameliorative change within the meaning of *Estrada*. (See *Baldivia*, *supra*, 28 Cal.App.5th at pp. 1078-1079; cf. *Stamps*, *supra*, 9 Cal.5th at p. 699.) The People have not pointed to anything in the text or legislative history of Senate Bill 620 that clearly signals that the Legislature intended section 12022.53(h), as

amended, to have only prospective application.  (See *Barton*, *supra*, 52 Cal.App.5th at p. 1153 ["Neither the text of the statute nor the legislative history of Assembly Bill 1618 'clearly signal' the intent of 'prospective-only application.'  [Citation.]"]; *People v. Frahs* (2020) 9 Cal.5th 618, 632 ["statute does not plainly communicate an intent that its provisions would apply only prospectively"], 635 [court did not "perceive in the legislative history a clear indication that the Legislature did not intend for the statute to apply retroactively"]; *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303-304 ["nothing in Proposition 57's text or ballot materials rebuts [*Estrada*'s inference of retroactivity]".)  Accordingly, section 12022.53(h), as amended, applies to defendant's case because his judgment is not yet final.  (See *Estrada*, *supra*, 63 Cal.2d at p. 745 ["The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final"]; cf. *Stamps*, *supra*, at p. 699.)

4.  *Potential Consequences to the Plea Agreement*

Undoubtedly, section 12022.53(h), as amended, was intended to eliminate mandatory firearm enhancements so that relief would be available to deserving defendants and allow trial courts at the time of sentencing and resentencing to exercise their discretion to strike or dismiss a firearm enhancement in the interests of justice pursuant to section 1385.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) as amended June 15, 2017, pp. 1, 3-4, 6; Sen. 3d Reading, Analysis of Sen. Bill No. 620 (2017-2018 Reg. Sess.) as amended June 15, 2017, pp. 1-3; Assem. Com. on Appropriations, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) as amended June 15, 2017, pp. 1-2.)  But defendant does not dispute that Senate Bill 620 and its legislative history say nothing regarding the legislative intent as to agreed-upon sentences.  (Cf. *Stamps*, *supra*, 9 Cal.5th at p. 704 ["That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for

18

relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements"].)

Under the reasoning of *Stamps*, in order to justify a remand to allow the trial court to consider striking an enhancement otherwise required to be imposed by section 12022.53 in the interest of justice (§ 1385) without potentially affecting the rest of his plea bargain, defendant had to establish not only that current section 12022.53(h) "applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Stamps*, *supra*, 9 Cal.5th at p. 701.) In his supplemental opening brief filed following the Supreme Court's transfer order, defendant does not claim that "the language [or the] legislative history of Senate Bill [620] suggests an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties." (*Id*. at p. 704.) Instead, defendant merely submits that "[t]o the extent that this court's original disposition [was] in tension with . . . *Stamps*, the court may wish to modify the remedy . . . ."

The appropriate remedy has been carefully explained by the Supreme Court in *Stamps*. Both defendant and the trial court upon remand should now understand the potential repercussions to the parties' plea agreement that can result from retroactive application of amended section 12022.53(h). (See *Stamps*, *supra*, 9 Cal.5th at pp. 707-708.) Armed with this information, defendant, if he still desires, may seek to have the trial court exercise its discretion to strike "an enhancement otherwise required to be imposed by [section 12022.53]" pursuant to section 1385. (§ 12022.53(h).) However, as suggested in *Stamps*, in the absence of legislative intent to the contrary, the court lacks authority "to unilaterally modify the plea agreement by striking [an enhancement that is an integral part] but otherwise keeping the remainder of the bargain." (*Stamps*, *supra*, at p. 707.) If the court does so and the prosecution has not agreed to the modification, the

prosecution is entitled to withdraw assent to the plea bargain. (*Ibid.*) In addition, "[t]he court's exercise of its new discretion to strike the [section 12022.53] enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement." (*Id.* at p. 708.)

In light of the potential consequences to the plea agreement, "it is ultimately defendant's choice whether he wishes to seek relief under Senate Bill [620]." (*Stamps*, *supra*, 9 Cal.5th at p. 708.) The case will be remanded to allow defendant the opportunity to request the court's exercise of discretion pursuant to section 1385, as now permitted by section 12022.53(h).

C. *Remand for a* Franklin *Hearing*

When defendant was sentenced on June 5, 2015, the recently enacted youth offender parole hearing statutes did not apply to him because he was not under 18 years of age at the time of his offenses. (See Stats. 2013, ch. 312, §§ 3, 4, 5.) Those statutes were later amended to apply to older offenders like him. (See Stats. 2015, ch. 471, §§ 1, 2; Stats. 2017, ch. 684, §§ 1.5, 2.5.)

In *Franklin*, the California Supreme Court determined that an offender who would be entitled to a hearing under youth offender parole hearing statutes should be afforded a "sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing."[13] (*Franklin*, *supra*, 63 Cal.4th at p. 284.) Defendant asks this court to remand this case for a *Franklin* hearing to give him an opportunity to develop a record of mitigating evidence relevant to his future youth offender parole hearing. The People do not object to such remand.

---

[13] Although section 3051"excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing" (*Franklin*, *supra*, 63 Cal.4th at p. 277), there has been no suggestion that defendant falls within any of those exclusions. (See § 3051, subd. (h).)

In *Franklin*, the Supreme Court found it was "not clear whether Franklin had sufficient opportunity to put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin*, *supra*, 63 Cal.4th at p. 284.) Consequently, it "remand[ed] the matter to the trial court for a determination of whether Franklin was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Ibid.*; see *id*. at pp. 286-287.) It provided the following guidance: "If the trial court determines that Franklin did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. Franklin may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Id*. at p. 284.)

The foregoing proceeding is commonly referred to as a "*Franklin* hearing." (See *In re Cook* (2019) 7 Cal.5th 439, 459.) As indicated, it "derives from the statutory provisions of sections 3051 and 4801. [Citations.]" (*Ibid*.) Section 3051, subdivision (a)(1), currently provides in relevant part: "A youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger . . . at the time of the controlling offense." The section defines "controlling offense" to mean "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment."[14] (§ 3051, subd. (a)(2)(B).) Section 3051, subdivision (b)(3), specifies:

---

[14] The Supreme Court in *Franklin* pointed out: "[T]he trial court sentenced Franklin to a mandatory term of 25 years to life under section 190 for first degree murder and to a consecutive mandatory term of 25 years to life under section 12022.53 on the firearm enhancement. Either the homicide offense or the firearm enhancement could be

21

"A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration." Section 4801, subdivision (c), states: "When a prisoner committed his or her controlling offense, as defined in subdivision (a) of [s]ection 3051, when he or she was 25 years of age or younger, the board, in reviewing a prisoner's suitability for parole pursuant to [s]ection 3041.5, shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

We agree that defendant should have an opportunity for a *Franklin* hearing. Consequently, it is unnecessary to reach defendant's constitutional contentions.

## DISPOSITION

We reverse the judgment. Upon remand, the court shall allow defendant an opportunity to seek relief under section 1385, as permitted by section 12022.53(h), and the court shall also determine whether defendant had an adequate opportunity to make a record of information that will be relevant to his eventual youth offender parole hearing, and, if he did not, allow the parties the opportunity to make a record of such information pursuant to *Franklin*, *supra*, 63 Cal.4th 261.

---

considered the 'controlling offense' under section 3051, subdivision (a)(2)(B)."
(*Franklin*, *supra*, 63 Cal.4th at p. 279.)

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.



_____

GROVER, J.



*People v. Antuna*
H042678